# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 2748 / 01 C 3892 | **DATE** | 7/8/2003 |
| **CASE TITLE** | Advance Cast Stone Company vs. Bridge, Structural and Reinforcing Iron Workers, Local Union No. 1 | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. The court grants Advance Cast Stone's motion (01 C 2748 Doc. No. 26-1 and 01 C 3892 Doc. No. 0-1) to alter or amend judgment pursuant to Rule 59(3). Judgment is entered in favor of Plaintiff.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 number of notices | **Document Number** |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | JUL 09 2003 date docketed | |
| | Notified counsel by telephone. | | | 31 |
| | Docketing to mail notices. | | U.S. DISTRICT COURT docketing deputy initials | |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| | ETV | courtroom deputy's initials | 03 JUL -8 PM 4:52 Date/time received in central Clerk's Office | 7/8/2003 date mailed notice ETV mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ADVANCE CAST STONE COMPANY, ) | | |
| ) | | |
| **Plaintiff** ) | | |
| v. ) | Case Nos. | 01 C 2748 |
| ) | | 01 C 3892 |
| BRIDGE, STRUCTURAL AND ) | | |
| REINFORCING IRON WORKERS, LOCAL ) | Judge Rebecca R. Pallmeyer | |
| UNION NO. 1, ) | | |
| ) | | |
| **Defendant.** ) | | |

**DOCKETED**

JUL 0 9 2003

## MEMORANDUM OPINION AND ORDER

Plaintiff, Advance Cast Stone ("ACS" or "the Company") brought this action in April 2001 challenging a January 18, 2001 award of a Joint Arbitration Board ("JAB") in favor of Defendant Bridge, Structural & Reinforcing Iron Workers, Local Union No. 1 (hereinafter "Iron Workers"). ACS argued that it was not bound by the terms of a Principal Agreement between the Iron Workers and the Associated Steel Erectors of Chicago and that the JAB therefore had no jurisdiction over a work assignment dispute between ACS and the Iron Workers. This court heard evidence at a two-day bench trial in March 2002, and, some months later, affirmed the finding of the JAB in favor of the Iron Workers. *Advance Cast Stone Co. v. Bridge, Structural & Reinforcing Iron Workers, Local Union No. 1*, No. 01 C 2748, 2002 WL 31163757 (N.D. Ill. Sept. 30, 2002). The court concluded, with some misgivings, that Seventh Circuit authority required the conclusion that ACS's actions indicated an intent to be bound by the Principal Agreement.

At the same time that the case was pending in this court, the parties were involved in a related proceeding before the National Labor Relations Board ("NLRB" or "the Board"). On September 26, 2002, unbeknownst to this court, the Board issued an opinion in which it concluded, contrary to this court's decision, that ACS was not bound by the Principal Agreement. ACS promptly filed the present Rule 59(e) motion to alter or amend this court's judgment. For the following reasons, the court grants ACS's motion, and reverses its earlier opinion.

## PROCEDURAL AND FACTUAL BACKGROUND

The court assumes the reader's familiarity with the court's earlier opinion but will provide background information necessary to the understanding of the disposition of this matter. ACS, an employer within the meaning of 29 U.S.C. § 152(2), is in the business of manufacturing and installing precast concrete. (Transcript of Proceedings ("Tr."), at 15-16.) The Company does most of its business in Wisconsin and Illinois and for at least 10 years, ACS has been party to the collective bargaining agreements between Illinois District Council No. 1 of the International Union of Bricklayers and Allied Craftworkers ("Bricklayers") and the Mason Contractors Association of Greater Chicago including, most recently, the agreement in effect between the Bricklayers and the Mason Contractors from June 2000 through May 2004 (the "Bricklayer Agreement"). (Tr., at 20, 153-57.)

Defendant Iron Workers, a labor organization within the meaning of 29 U.S.C. § 152(5), bargain with the Associated Steel Erectors of Chicago ("Steel Erectors"). The Iron Workers have entered into a series of Principal Agreements with the Steel Erectors.[1] (Tr., at 198-99, 206-08, 256, 298-99.) ACS has never been a member of the Steel Erectors, but on a few occasions since the early 1980s, ACS entered into compliance agreements by which it agreed to be bound by the Principal Agreement then in effect. ACS considers the Bricklayers more skilled than the Iron Workers at the concrete installations performed by the Company, however, and the Bricklayer Agreement is economically more favorable to the Company with regard to overtime and minimum reporting pay requirements than the Principal Agreement with the Iron Workers. (Tr., at 23-24, 29, 104-05.) On November 25, 1996, ACS submitted a written notice of termination to the Iron Workers, and it is undisputed that effective at midnight on May 31, 1997, the Company's

---

[1] The most recent Principal Agreement the court is aware of was in effect from June 2000 through May 2003. (Final Pretrial Order, Statement of Uncontested Facts ¶¶ 8, 10, 11; Tr., at 198-99, 206-08, 256, 298-99.)

compliance agreements terminated and ACS was no longer bound to the Principal Agreement with the Iron Workers. (Tr., at 23-24, 74-75, 257.)

At some point in July or August 1998, ACS began working on the Block 120 project, a multi-tenant building located on the corner of Ontario and Rush Streets in Chicago. (Tr., at 32.) ACS alleges that when it arrived at the project with a crew composed exclusively of Bricklayers, some Iron Workers who were working on the project for other subcontractors began walking off the job in protest of the fact that there were no Iron Workers in ACS's crew. (Tr., at 33-35.) After the general contractor for the project warned that the Company would be charged for any delays caused by other unions walking off the job site, ACS entered into a Short Form Agreement with the Iron Workers on August 6, 1998. (Tr., at 35-39.) The Short Form Agreement provided in part that ACS would pay set amounts to the Iron Workers' trust fund for certain negotiated benefits for each hour that Iron Workers worked under the agreement. Unlike the compliance agreements ACS had entered into previously, however, the August 1998 Short Form Agreement did not reference the Principal Agreement.

From August 1998 to June 1999, ACS paid wages and fringe benefits to Iron Workers members and filed monthly reports on the hours worked. (Tr., at 140-41, 219-220.) During this period, ACS also made contributions to the Iron Workers' pension fund. (Id. at 21-25.) After signing the Short Form Agreement, ACS sent the Iron Workers documentation of a Wage and Fringe Benefit Bond and of liability coverage, which it did not cancel until February 12, 2001. (Id. at 228-29, 231-32.) The Company did not employ any Iron Workers between July 1999 and July 2000. (Id. at 129-31.)

The present dispute concerns the significance of the Short Form Agreement with respect to a project ACS performed in 2000 at Chicago's Goodman Theatre. ACS employed an all-Bricklayer crew for this job. Asserting that ACS became bound to the Principal Agreement with the Iron Workers when it signed the Short Form Agreement in August 1998, the Iron Workers

3

threatened to picket if ACS refused to employ Iron Workers members on the Goodman Theatre project. (Tr., at 53.) Shortly thereafter, ACS filed an unfair labor practice charge with the NLRB, contending that the threat to picket was unlawful.[2] (*Id.*) At an unspecified date, the Iron Workers contacted the NLRB and disclaimed interest in the Goodman project, rendering ACS's charge moot. (*Id.*)

On or about November 21, 2000, however, the Iron Workers submitted a Grievance Dispute/Demand for arbitration to the JAB, alleging that ACS's actions had bound it under the Iron Workers' Principal Agreement, and arguing that ACS violated the Principal Agreement by refusing to employ members of the Iron Workers on the Goodman Theatre project. (Tr., at 54, 137-40, 224-25, 287-88.) On January 18, 2001, the JAB held a hearing on the grievance. Later the same day, the JAB issued a decision in which it found that ACS had been bound to the Principal Agreement since signing the Short Form Agreement on August 6, 1998, and had violated the terms of the Principal Agreement. (Tr., at 56, 146-48, 289.) On April 18, 2001, ACS filed this suit to vacate the JAB's award. On September 30, 2002, this court decided in favor of the Iron Workers, and affirmed the JAB's decision.

Meanwhile, ACS filed a Section 10(k) action with the NLRB on May 8, 2001, alleging that the Iron Workers violated Section 8(b)(4)(ii)(D)[3] of the National Labor Relations Act (NLRA) by

---

[2]  Because the parties have not submitted ACS's NLRB charge, the court has relied on ACS's summary thereof.

[3]  A §10(k) proceeding is a hearing conducted by the NLRB prior to the Board hearing a §8(b)(4)(ii)(D) unfair labor practice claim, to determine which union has the superior claim to "work in dispute." Before the NLRB may proceed with a determination of the dispute, it must be satisfied that there is reasonable cause to believe that §8(b)(4)(ii)(D) has been violated and work is actually "in dispute," and that the parties have not agreed on a method for a voluntary adjustment of the dispute. *Miron Construction Co., Inc. v. Int'l Union of Operating Engineers, Local 193*, 44 F.3d 558, 561, n. 11 (7th Cir. 1995). Section 8(b)(4)(ii)(D) makes it an unfair labor practice for a labor organization to strike or threaten or coerce an employer or other person in order to force or require an employer to assign particular work to one group of employees rather than to another, unless the employer is refusing to honor a representation order of the Board. 29 U.S.C. § 158.
(continued...)

4

forcing ACS to assign certain work to the Iron Workers rather than to the Bricklayers. A hearing was held before Hearing Officer Lisa Friedheim Weis on May 29 and 30, and at some point thereafter she entered a ruling on the matter.[4] On September 26, 2002, just four days before this court issued its opinion, the NLRB affirmed the hearing officer's rulings, holding that the parties had not entered into a binding agreement to arbitrate their dispute, and that the Iron Workers had committed an unfair labor practice by threatening to picket in order to obtain work for Iron Worker in favor of Bricklayers. 338 NLRB No. 13 (Sept. 26, 2002).

ACS moves this court to reconsider and amend its ruling in light of the NLRB's decision. The Company faces a difficult scenario: to obey the NLRB's ruling, ACS must violate this court's decision enforcing the JAB determination. The court agrees with ACS that in light of the NLRB's ruling, this court's previous opinion should be vacated.

## DISCUSSION

### Standards for Motion to Alter or Amend Judgment

Any substantive motion that challenges the merits of a district court's decision and is served within ten days after the entry of a judgment is considered under Rule 59(e). FED. R. CIV. P. 59(e). Such a motion should be granted "if there exists 'a manifest error of law or fact,' so as to enable 'the court to correct its own errors and thus avoid unnecessary appellate procedures.'" *Divane v. Krull Elec. Co.*, 194 F.3d 845, 848 (7th Cir. 1999), quoting *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996). A court may, on its own initiative, consider any issue not addressed in a party's Rule 59(e) motion. *Charles v. Daley*, 799 F.2d 343, 347 (7th Cir. 1986).

---

[3](...continued)

[4] The parties have not submitted the Hearing Officer's Ruling.

5

## The Effect of the NLRB Decision on this Case

ACS correctly notes that the law of this circuit directs that an NLRB decision issued pursuant to a §10(k) proceeding overrides a conflicting decision by an arbitrator. *See Chauffeurs & Helpers Local Union No. 50 v. McCartin-McAuliffe Mechanical Contractor, Inc.*, 708 F.2d 313, 315 (7th Cir. 1983) (citations omitted). The Iron Workers concede this principle, but argue that the two decisions at issue here do not conflict, and therefore the court need not yield to the NLRB's conclusions. Neither party has directly addressed the situation presented here, namely, whether an arbitration decision that has been affirmed by a federal district court must also yield to a contrary NLRB decision, although the Iron Workers implicitly argue the negative, while ACS urges this court to follow the NLRB's decision.

In the Iron Workers' view, this lawsuit concerns ACS's actions between August 1998 and January 2001, and therefore is not affected by the outcome of the NLRB's decision, which dealt with a dispute between the parties arising in May 2001, concerning precast work in Deerfield, Illinois. The Iron Workers note that the precise issues posed to this court in the parties' Final Pretrial Order were (1) "Whether the Joint Arbitration Board had jurisdiction over Advance Cast Stone on January 18, 2001," and (2) "Whether Iron Workers, Local No. 1 has shown that Advance Cast Stone was a party to a collective bargaining agreement with Iron Workers, Local No. 1 from the Fall of 1998 through June 2001 and has shown that Advance Cast Stone breached that agreement." (Final Pretrial Order, Nos. 1 & 2.) The Iron Workers contend that the Deerfield project is a "separate and distinct dispute relating to an unfair labor practice charge arising out of picketing activity," and therefore this lawsuit is completely unaffected by the NLRB's handling of that dispute. (Defendant's Brief in Opposition to Plaintiff's Motion to Alter or Amend Judgment, at 3.)

The court finds this characterization strained. The court notes, initially, that one of the two issues presented to this court, which the Iron Workers specifically point to in their brief in opposition

to this motion, concerns ACS's behavior with respect to the Iron Workers as late as June 2001, after the Deerfield dispute arose and the NLRB action was filed. On page two of its decision, the NLRB noted that the dispute over the Deerfield project "is not the first among the parties." 338 NLRB No. 13, at 2. The NLRB went on to discuss the dispute that arose in August 1998 regarding the Block 120 project, the 2000 dispute over work at the Goodman Theatre site, and a dispute in January or February 2001 regarding a project on a University of Chicago dormitory. *Id.* The Board's opinion made reference to the very dispute that led to this lawsuit: the Board noted that the Goodman Theatre dispute led the Iron Workers to file a grievance with the JAB, that the JAB heard the grievance, and that ACS challenged the JAB's jurisdiction over the Company and ultimately appealed the JAB's decision to this court. *Id.* "Thus," noted the NLRB, "the record establishes that from 1998 through 2001, the Iron Workers have picketed or threatened to picket five sites, including the Nine North Parkway [Deerfield] site, and filed demands for arbitration at three of those sites, with the object of compelling [ACS] to use iron workers on its crews performing precast installation work." *Id.*

ACS's main argument to the NLRB was that only that body could resolve the dispute between the parties because there was no agreement between them to any voluntary method of resolution. *Id.* at 3. On the merits, ACS argued that the NLRB should award the disputed work to the Bricklayers because of the Company's practice of assigning work to Bricklayers over the years, ("particularly the 4 years since terminating its agreement with the Iron Workers [in 1997]"). *Id.* The Iron Workers responded that the dispute was contractual rather than jurisdictional, and that the Principal Agreement bound ACS to adjudicate the dispute in front of a local board such as the JAB. *Id.*

The NLRB found no merit in the Iron Workers' position. *Id.* at 3, n.8. The NLRB concluded that ACS "is not signatory to the Principal Agreement or to any other agreement that might reasonably be construed as binding [ACS] to it." *Id.* The NLRB's finding contrasts with this court's

7

original conclusion that ACS's conduct after signing the Short Form Agreement indicated an intent to be bound by the Principal Agreement. Although not all the evidence submitted to this court supported the Iron Workers' case, this court noted that ACS submitted monthly work reports on Iron Workers employees for a full 12 months after it last employed any Iron Workers, consented to an Iron Workers audit that was not referred to on the Short Form Agreement, and satisfied a wage and welfare bond requirement imposed by the Principal Agreement and not mentioned in the Short Form Agreement. *Advance Cast Stone*, 2002 WL 31163757, * 7.

The Board, on the other hand, noted that the JAB itself had not stated the basis for the award in favor of the Iron Workers. *Id.*, citing *Operating Engineers Local 318 (Kenneth E. Foeste Masonry)*, 322 NLRB 709, 714 (1996) (declining to give weight to arbitrator's decision lacking rationale). The Board remarked that

> [t]he project-only agreement that [ACS] signed with respect to the Block 120 project makes no reference to the Principal Agreement and neither do the [ACS's] letters consenting to use composite crews at the Cathedral Place and Rush Garage construction sites. [ACS] is not a signatory to *any* agreement between the Iron Workers International and the Bricklayers International Unions, and clearly not to an agreement that requires the use of composite bricklayer and iron worker crews for the work in issue or the submission of disputes to joint boards.

*Id.*, at 4. The Board held that the joint board decisions "cannot bind [ACS] to . . . JAB processes." *Id.* The NLRB went on to address the merits of the dispute, concluding that Bricklayers employees were entitled to perform the work in dispute. *Id.*, at 5. Finding that this dispute was likely to recur, and citing the Iron Workers' "history of conduct that arguably violates Section 8(b)(4)," the Board issued a broad award, giving ACS permission to use Bricklayers for projects within the Iron Workers' territorial jurisdiction. *Id.*

8

The NLRB's careful review of the history between the parties defeats the Iron Workers' argument that the dispute before the Board is separate and distinct from the one addressed by this court. As ACS points out, the JAB found that ACS was bound to the Principal Agreement; the NLRB found that it was not, and specifically noted that the JAB had no jurisdiction over ACS. Although the JAB did not directly address the Deerfield project, the NLRB's order makes clear that ACS was not bound by the Principal Agreement to use Iron Workers at that site, either.

The situation facing the court, where a JAB and the NLRB have reached conflicting results, is unusual but not unprecedented. The Northern District of Indiana considered such a scenario in *Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers, Local No. 395, AFL-CIO v. Lake County, Indiana Council of the United Brotherhood of Carpenters*, 347 F.Supp. 1377, 1378 (N.D. Ind. 1972). In that case, plaintiff, a labor organization, brought a breach of contract action for enforcement of an arbitrator's award concerning a work assignment dispute with the defendant. Unlike the facts of this case, both parties had expressly agreed to be bound by the arbitrator's decision. When the defendant claimed that the arbitrator's award was not binding, the plaintiff sued for injunctive relief, lost wages, and costs. *Id.* at 1379. During the course of the federal court proceedings, the NLRB issued a ruling that conflicted with that of the arbitrator. *Id.*

The *Lake County* court framed the issue as "whether the NLRB determination of the work assignment dispute in §10(k) proceedings precludes a later determination by this Court of damages for breach of contract." *Id.* The court concludes that once the NLRB concludes that the parties did not in fact submit to a particular method of dispute resolution, the court should defer to that decision and not subject the prevailing party to a suit for contract damages. *Id.* at 1383.

Our Court of Appeals has cited *Lake County* as standing for the proposition that a district court should treat an NLRB decision awarding disputed work as a bar to recovery of damages pursuant to an arbitrator's contrary award. *Local 7-210, Oil, Chemical & Atomic Workers v. Union Tank Car Co.*, 475 F.2d 194, 198 (7th Cir. 1973). More recently, the Court has reaffirmed that an

9

NLRB decision awarding disputed work takes precedence over a contrary arbitration award. *See Miron Construction Co.*, 44 F.3d at 564 (citations omitted) ("When an arbitration award is in conflict with the decision of the NLRB in a §10(k) proceeding, the NLRB decision takes precedence.")

The Iron Workers urge that another district court opinion, *International Ass'n of Bridge, Structural & Ornamental Iron Workers v. Glaziers, Architectural Metal & Glass Workers Local Union No. 27*, 40 F.Supp.2d 997 (N.D. Ill. 1999), favors their position, but the court is not convinced that the facts of that case are so closely analogous to this one. In *Glaziers*, disputes arose between two unions as a result of projects on a Hampton Inn motel and the Sears Tower, both in Chicago. *Id.* at 1000-01. The unions had entered into a contract to prevent disputes as to which union would be entitled to perform specific jobs in a designated geographic area. *Id.* at 999. A third party who had subcontracted with one of the unions (the Glaziers) brought a claim before the NLRB, arguing that the Glaziers violated the NLRA by attempting to force the third party to assign the work at the Hampton Inn project to Glaziers rather than Iron Workers, the other union. *Id.* at 1002. The NLRB decided that the Glaziers did not violate the NLRA. *Id.* When the Iron Workers brought the federal lawsuit (alleging breach of contract with respect to the Hampton Inn and Sears Tower jobs), one of the Glaziers' defenses was that the federal district court should dismiss the lawsuit because the Iron Workers sought relief that would be inconsistent with the NLRB's decision. The court rejected this argument, noting that because the Iron Workers sought damages for breach of contract, there was no conflict with the NLRB's decision that the Glaziers had not committed an unfair labor practice. *Id.* at 1003.

The *Glaziers* case differs from the present one in a few key respects. For one thing, the NLRB action involved the Glaziers and a third party, while the federal lawsuit was brought by the Iron Workers against the Glaziers. Second, the NLRB did not consider whether a contract between the Glaziers and the Iron Workers existed, nor was the validity of the contract even an issue in front of the NLRB, rather, the parties disputed whether the terms of the contract had been violated. *Id.*

at 1002. Here, on the other hand, both the NLRB matter and this lawsuit involve identical parties, and both concern the existence of a contract between ACS and the Iron Workers. The court's opinion here, that ACS was bound by the Principal Agreement, is directly at odds with the NLRB's conclusion that the Company was not bound. For these reasons, the court does not find the *Glaziers* case to be persuasive.

The Iron Workers also argue that the NLRB's decision was not "final and appealable," regarding the issue of whether the Iron Workers violated Section 8(b)(4)(ii)(D) of the NLRA, nor was it a determination of whether ACS's conduct prior to the January 18, 2001 JAB decision bound the Company to a collective bargaining agreement with Local 1. (Defendant's Brief in Opposition to Plaintiff's Motion to Alter or Amend Judgment, at 2, 9, n.1.) Therefore, the Iron Workers contend, the NLRB's decision should not disturb this court's previous decision. For the reasons explained earlier, the court's summary of the NLRB's decision belies the notion that the NLRB made no determination concerning ACS's conduct prior to 2001. There is no question that the NLRB did consider ACS's earlier conduct and determined that ACS was not bound by the Principal Agreement. Nor is the court moved by the Iron Workers' argument that the NLRB's decision is not final. The Iron Workers are correct that a §10(k) decision, standing alone, binds no one. *NLRB v. Plasterers' Local Union No. 79*, 404 U.S. 116, 126 (1971). The Supreme Court explained in *Plasterers' Local*, however, that "for all practical purposes the Board's [§10(k)] award determines who will prevail in the unfair labor practice proceedings. If the picketing union persists in its conduct despite a §10(k) decision against it, a §8(b)(4)(D) complaint issues and the union will likely be found guilty of an unfair labor practice and be ordered to cease and desist." *Id.* at 127. The Court noted that there is "intense pressure, practically, to conform to the Board's decision." *Id.* The NLRB's decision does resolve the contractual claims that the Iron Workers brought against ACS. By holding that there was no legally binding contract between the two entities, the NLRB

11

implicitly held that ACS did not violate the Principal Agreement. Therefore, the court rejects the Iron Workers' argument that the NLRB decision is not binding.

The Iron Workers also make the argument that the NLRB's decision does not deprive this court of jurisdiction over the present matter. This point is not disputed, however; ACS agrees that this court retains jurisdiction to decide this case, brought under § 301 of the National Labor Relations Act. Rather, ACS argues that the court should reverse its earlier decision so that the Company is not put in the position of violating one court's order while complying with another's. For the reasons explained above, the court agrees.

## CONCLUSION

For the foregoing reasons, the court grants Advance Cast Stone's motion (01 C 2748 Doc. No. 26-1 and 01 C 3892 Doc. No. 0-1) to alter or amend judgment pursuant to Rule 59(e). Judgment is entered in favor of Plaintiff.

ENTER:

Dated: July 8, 2003

REBECCA R. PALLMEYER
United States District Judge

12